UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA P. ZINN and<br>BIANCA S. GILMORE,<br><br>Plaintiffs,<br><br>v.<br><br>THE VILLAGE OF SAUK VILLAGE<br>and Sauk Village Police Officer<br>RICHARD AGUAYO,<br><br>Defendants. | Case No. 16-cv-3542<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between Plaintiffs Sheila Zinn ("Zinn") and Bianca Gilmore ("Gilmore") and Defendants the Village of Sauk Village ("Sauk Village") and one of its police officers, Richard Aguayo ("Aguayo"), regarding the impoundment of Zinn's automobile on March 24, 2014. Plaintiffs bring five causes of action in their Amended Complaint [19]. Plaintiffs allege that Aguayo illegally seized Gilmore (Count I); illegally searched and seized Zinn's automobile (Count II); and unlawfully retaliated against Plaintiffs' exercise of their First Amendment rights (Count III) in violation of 42 U.S.C. § 1983. Plaintiffs further assert a § 1983 *Monell* claim against Sauk Village for its alleged widespread practice of unconstitutionally seizing private property in order to raise revenue (Count IV). Finally, Plaintiffs bring a state law indemnification claim against Sauk Village under 745 ILCS 10/9-102 for Aguayo's misconduct (Count V). On November 17, 2016, Defendants jointly moved under Federal Rule of Civil Procedure 12(b)(6) to

1

dismiss Plaintiffs' Amended Complaint for failure to state a claim. Defs.' Mot. Dismiss [23]. For the reasons explained below, Defendants' motion is granted in part and denied in part.

**I.    Background**

Plaintiffs' Amended Complaint [19] sets forth the following relevant facts, which the Court accepts as true for the purposes of Defendants' motion. On the morning of March 24, 2014, Plaintiff Bianca Gilmore was involved in a traffic accident while driving a vehicle owned by her mother, Plaintiff Sheila Zinn. Am. Compl. [19] ¶ 7. Shortly thereafter, Defendant Richard Aguayo, a Village of Sauk Village Police Officer, arrived on the scene and issued accident reports to Gilmore and the other driver. *Id.* ¶ 8. Plaintiffs allege that Aguayo then ordered Gilmore, without probable cause, to follow him to the Sauk Village police station. *Id.* ¶¶ 8, 10. After requiring Gilmore to wait at the police station for an hour and a half, Aguayo advised her to contact someone who could come to the station and pay a $350 bond. *Id.* Gilmore contends that, at this point, she had not been issued a ticket nor informed that charges were being brought against her. *Id.* ¶ 13.

Gilmore contacted her mother via telephone. *Id.* ¶ 14. Plaintiffs allege that, during the call, Aguayo notified Zinn that Gilmore had been arrested, but refused to provide further information. *Id.* ¶ 15. Instead, Aguayo told Zinn that her daughter would be "going into a cage" if Zinn did not pay the $350 bond, and hung up on her. *Id.*

After Aguayo hung up the phone, Zinn called the Sauk Village Police Department to obtain more information. *Id.* ¶ 16. A different Sauk Village police officer assured her that, contrary to Aguayo's claims, Gilmore had not been taken into custody. *Id.* ¶ 18. Nevertheless, Gilmore remained at the Sauk Village Police Station.

Later that day, Aguayo once again told Gilmore to contact her mother, this time to determine why Zinn "was taking so long" to pay Gilmore's bond. *Id.* Aguayo again threatened to put Gilmore "in a cell" if Zinn did not show up with $350 in cash. *Id.* ¶ 19. After Gilmore made contact with her mother, Zinn questioned the legality of Aguayo's actions. *Id.* ¶ 21. In response, Aguayo "got angry" and stated that Zinn's questioning had "made things bad for her." *Id.* According to Plaintiffs, Aguayo then "caused false charges to be made" against Gilmore, processed her, and placed her in a cell.[1] *Id.* ¶ 22. Plaintiffs also allege that at this point, Aguayo reached into Gilmore's pocket and seized the car keys to Zinn's automobile. *Id.* ¶ 23.

Eventually, Zinn travelled to the Sauk Village Police Station in person. Upon arrival, she asked to speak with the Chief of Police in order to file a complaint. *Id.* ¶¶ 24-25. In response, Aguayo falsely told Zinn that he was the Chief of Police and that Zinn should speak with him in his office about paying Gilmore's bond. *Id.* ¶ 25.

---

[1] Plaintiffs' Amended Complaint [19] does not specify the particular charges filed.

3

Aguayo finally released Gilmore later that day,[2] but retained possession of Zinn's automobile. *Id.* ¶¶ 23-26. Upon her release, Aguayo provided Gilmore with a "Notification of Vehicle Impoundment" that identified "aiding and abetting the commission of a crime" as justification for the vehicle's seizure. *Id.* ¶ 28. Plaintiffs allege, however, that the notice did not specify the crime Gilmore had allegedly aided and abetted, a date for an administrative hearing, or Gilmore's right to such a hearing. *Id.* ¶¶ 28-29.

Plaintiffs also allege that, while Zinn's vehicle was impounded, the Sauk Village Police Department rejected or obstructed multiple attempts to file official complaints regarding Aguayo's conduct. *Id.* ¶ 48. Specifically, Zinn tried to file a notarized complaint against Aguayo three times on March 31, 2014, but was told that no one was present to accept her grievance. *Id.* ¶ 49. Plaintiffs maintain that when a complaint was finally submitted, it was never investigated by Sauk Village and Aguayo was never punished for his actions. *Id.* ¶ 53.

On April 1, 2014, Plaintiffs requested a preliminary hearing regarding the impoundment of Zinn's vehicle. *Id.* ¶¶ 30-31. Plaintiffs allege that, under the Sauk Village Municipal Code, the owner of an impounded vehicle may request a preliminary hearing within fifteen days of impoundment, and, once such a request is made, a preliminary hearing must be held within forty-eight hours. *Id.* ¶ 31. Nevertheless, Plaintiffs were not given a timely preliminary hearing. *Id.* ¶ 32.

---

[2] Plaintiffs' Amended Complaint [19] does not specify whether Zinn paid Gilmore's bond prior to her release.

4

Instead, a final administrative hearing was held without notice on April 17, 2014, at which time default judgment was entered against Plaintiffs. *Id.* ¶¶ 33-34.

Despite the default judgment, Plaintiffs were granted a preliminary hearing in August 2014. *Id.* ¶ 58. Plaintiffs allege that when Gilmore appeared at the hearing, however, a neutral arbiter was not present. *Id.* Instead, an attorney for Sauk Village informed Gilmore that Zinn's car would be released to her custody if she signed a settlement agreement and a release of all potential claims against the Village. *Id.* ¶ 59. Gilmore refused. *Id.* ¶ 60.

On October 1, 2015, Sauk Village's Public Safety Administrator reviewed the evidence that Plaintiffs initially provided in their April 1, 2014 request for a preliminary hearing. *Id.* After reviewing the evidence, the Public Safety Administrator waived all fines and ordered that Zinn's vehicle be released. *Id.* In the end, Zinn's vehicle was impounded for nineteen months, during which time Plaintiffs incurred various expenses for rental cars, taxi services, and public transportation. *Id.* ¶¶ 55, 57.

Plaintiffs claim that Zinn's vehicle was initially seized pursuant to Sauk Village's Vehicle Impoundment Ordinance ("the Ordinance"). *Id.* ¶¶ 35-36. Plaintiffs allege that, since 2011, Sauk Village police officers have routinely seized and impounded vehicles under the auspice of the Ordinance "without a warrant and when no valid exception to the warrant requirement applies" in order to raise revenue for the Village. *Id.* ¶¶ 35-37, 41, 46. Plaintiffs assert that, as a result of

5

this unlawful practice, tow release fees collected by the Village have substantially increased in recent years.[3] *Id.* ¶¶ 42-44.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). A motion to dismiss tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998). To survive a motion to dismiss, the claim must first comply with Rule 8 of the Federal Rules of Civil Procedure by providing a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice" of what the claim is "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, the complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

---

[3] For example, Plaintiffs allege that during fiscal year 2012, Sauk Village collected $106,195 in tow release funds. Am. Compl. [19] ¶ 44. For a six-month period of fiscal year 2013, Sauk Village raised $76,670. *Id.* For the fiscal year ending on April 30, 2015, Sauk Village raised $170,675. *Id.*

6

*Twombly*, 550 U.S. at 556). The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The "amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). In evaluating the complaint, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of Plaintiff. *Iqbal*, 556 U.S. at 678.

## III. Discussion

The Court begins with two preliminary matters. First, in response to Defendants' motion, Plaintiffs' agree to voluntarily dismiss their claim for unlawful seizure of Gilmore on March 24, 2014. Pls.' Resp. Defs.' Mot. Dismiss [28] n.1. Therefore, Defendants' Motion to Dismiss [23] as it relates to Count I is granted. Second, Defendants' pleadings omit any discussion of Plaintiffs' indemnification claim. Therefore, Defendants' Motion to Dismiss [23] as it relates to Count V is denied. Plaintiffs' remaining claims (Counts II-IV) will be discussed in turn.

### A. Count II: Illegal Search and Seizure of Zinn's Automobile

The Fourth Amendment protects the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To state a § 1983 claim for a Fourth Amendment violation, Plaintiffs must plausibly allege that: (1) there was a search or seizure;

7

and (2) the search or seizure was unreasonable. *Angara v. City of Chicago*, 897 F. Supp. 355, 358 (N.D. Ill. 1995). Generally, searches and seizures are unreasonable when conducted without a warrant and without satisfying one of the exceptions to the warrant requirement. *Ivy v. Powers*, No. 08-cv-3826, 2009 WL 230542, at *3 (N.D. Ill. Jan. 30, 2009). Here, Plaintiffs claim that Aguayo initially seized Zinn's automobile without probable cause, after Aguayo "caused false charges to be made" against Gilmore. Am. Compl. [19] ¶¶ 10, 22. This is sufficient to state a Fourth Amendment claim under § 1983.[4]

In response, Defendants assert that Aguayo's initial seizure *was* supported by probable cause because Zinn's vehicle registration was suspended. Defs.' Mem. Supp. Mot. Dismiss [24] 4-5. In support of their claim, Defendants submitted a Sauk Village Police Department "Vehicle History Abstract" which indicates Zinn's registration expired on May 20, 2013. *Id.* Ex. A. At this preliminary stage, however, the Court is generally confined to the facts alleged in Plaintiffs' Amended Complaint, which states that Aguayo seized Gilmore "without probable cause or any other lawful basis." Am. Compl. [19] ¶ 10; *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006). Of course, under Rule 10(c), a "copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," including "a limited class of attachments to Rule 12(b)(6) motions." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). This "limited class,"

---

[4] In their motion, Defendants attack Plaintiffs' seizure claim by defending the *facial* constitutionality of Sauk Village's Vehicle Impoundment Ordinance. Defs.' Mem. Supp. Mot. Dismiss [23] 6-8. Given the circumstances alleged in *Plaintiffs'* specific case, however, this Defendants' argument is unavailing.

8

however, only includes documents that "are referred to" in Plaintiffs' complaint and "are central" to their claim, such as a contract. *Id.* Such an exception does not apply here. Defendants' argument, therefore, is premature.

Citing *Lee v. City of Chicago*, 330 F.3d 456 (7th Cir. 2003), Defendants also argue that the Fourth Amendment does not apply to Sauk Village's administrative hearing process that followed Aguayo's initial seizure of Zinn's vehicle. Defs.' Mem. Supp. Mot. Dismiss [24] 8. In *Lee*, the Seventh Circuit held that the Fourth Amendment is limited "to an individual's interest in *retaining* his property." 330 F.3d at 466 (emphasis in original). Thus, once an individual "has been meaningfully dispossessed," the "seizure of the property is complete," and the Fourth Amendment "cannot be invoked by the dispossessed owner to regain his property." *Id.* Here, however, complaints about Sauk Village's impoundment practices notwithstanding, Plaintiffs claim that Aguayo's *initial* seizure of Zinn's vehicle was unreasonable. Thus, even under *Lee*, Plaintiffs' Fourth Amendment claim remains viable.

Defendants' further contend that, under *Lee*, Plaintiffs cannot bring a Fourth Amendment claim due to their failure to exhaust administrative remedies. Defs.' Mem. Supp. Mot. Dismiss [24] 9. The *Lee* court required a showing that state-law remedies were inadequate, however, because the plaintiff brought a substantive due process claim that only implicated the deprivation of a property interest, not a fundamental right. 330 F.3d at 467. Here, Plaintiffs allege an independent constitutional violation under the Fourth Amendment. Under this theory, Plaintiffs

need not exhaust state remedies before filing in federal court. *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982) ("[W]e conclude that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983.").

Finally, Defendants argue that Aguayo is entitled to qualified immunity. Defs.' Mem. Supp. Mot. Dismiss [24] 12. Government officials performing discretionary functions are protected from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When considering a qualified immunity defense, the Court contemplates: (1) whether Plaintiffs' allegations establish that Defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of Defendant's conduct. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011) (citing *Siliven v. Ind. Dep't. of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011)).

Here, accepting all well-pleaded allegations as true, as we must, Defendants' qualified immunity claim fails. Plaintiffs assert that Aguayo possessed neither a warrant nor probable cause to seize Zinn's vehicle. Am. Compl. [19] ¶ 55. Indeed, Plaintiffs allege that Aguayo went so far as to *falsify* charges against Gilmore in order to effectuate the vehicle's impoundment. Am. Compl. [19] ¶ 22. Even under the exacting standards for denial of qualified immunity, s*ee White v. Pauly*, 137 S. Ct. 548, 552 (2017) (reiterating that "clearly established law" should not be defined

"at a high level of generality" and must be "particularized" to the facts of the case"), freedom from seizure under such circumstances was clearly established at the time of Aguayo's conduct. *See Washington v. Haupert*, 481 F.3d 543, 551 (7th Cir. 2007) ("According to the plaintiffs, the police officers fabricated a police report in order to justify their arrests. A reasonable officer would have understood that what he was doing violated their right to be free from unreasonable seizure."); *Garcia v. City of Chicago*, No. 09-cv-5598, 2012 WL 601844, at *7 (N.D. Ill. Feb. 23, 2012) ("It was clearly established in December 2007 that the Fourth Amendment prohibits a law enforcement officer from knowingly leveling false charges in a case report or criminal complaint."); *Treece v. City of Naperville*, No. 94-cv-5548, 1998 WL 142391, at *11 (N.D. Ill. Mar. 25, 1998) ("[F]alsifying police reports and fabricating charges violated Treece's rights under the Fourth Amendment."). Aguayo is therefore not entitled to qualified immunity, at least at this stage of the proceedings.

For the reasons stated above, Defendants' motion as it relates to Count II is denied.

### B. Count III: First Amendment Retaliation

In Count III, Plaintiffs claim that the seizure and extended impoundment of Zinn's automobile constituted punitive retaliation for Plaintiffs' grievances against Aguayo. Am. Compl. [19] ¶¶ 56, 71-73. To adequately plead a First Amendment retaliation claim, Plaintiffs must allege that: (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their

speech was at least a motivating factor in Defendants' actions. *Spalding v. City of Chicago*, 24 F. Supp. 3d 765, 775 (N.D. Ill. 2014).

Defendants argue that Plaintiffs have "not suffered deprivation of a constitutional right." Defs.' Reply [32] 9. It is well settled, however, that the First Amendment creates a right to petition the government—including state and local government—for a redress of grievances. *Ogurek v. Gabor*, 827 F.3d 567, 568 (7th Cir. 2016); *Belk v. Town of Minocqua*, 858 F.2d 1258, 1261 (7th Cir. 1988) ("[T]he freedom to petition the government for redress of grievances is but one of several fundamental freedoms protected by the [F]irst [A]mendment."). Moreover, in identifying the kind of deprivation that would deter speech, the test is "whether a person of 'ordinary firmness' would be deterred from exercising his or her First Amendment rights." *Sneed v. City of Harvey*, 6 F. Supp. 3d 817, 840 (N.D. Ill. 2013), *aff'd sub nom.*, 598 F. App'x 442 (7th Cir. 2015) (citing *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). The Court applies "an objective test to determine whether an action is materially adverse," but whether it meets that standard "depends on the context and circumstances of the particular case." *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 916 (N.D. Ill. 2010). The extended impoundment of Zinn's automobile satisfies this standard. *See DeGuiseppe v. Vill. of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995) ("[R]etaliation need not be monstrous to be actionable under the First Amendment[.]"); *Kafka v. Grady*, No. 12-cv-50123, 2014 WL 4725399, at *7 (N.D. Ill. Sept. 23, 2014) (citing this circuit's "liberal interpretation

of what an actionable constitutional deprivation can be for First Amendment retaliation claims under [§ 1983].").

Defendants also argue that the impoundment of Plaintiffs' vehicle "precede[d] any speech made by Plaintiffs in opposition to [the] Village's tow and impound policy," thus precluding a finding of retaliatory motive. Defs.' Mem. Supp. Mot. Dismiss [24] 9 ("[I]t is not clear how there could be any relationship between the Plaintiffs' speech and the prior tow and impoundment of their vehicle."); Defs.' Reply [32] 7 ("All of Plaintiff's allegedly protected speech occurred after the tow and impoundment of Plaintiff's vehicle.").

Defendants' characterization of the alleged facts, however, is inaccurate. According to Plaintiffs, Zinn first questioned the legality of Aguayo's actions via telephone, *before* Gilmore was falsely charged and placed in a cell. Am. Compl. [19] ¶¶ 19, 21-23. It was only *after* Zinn's oral complaint that Aguayo told Gilmore that Zinn's challenge had "made things bad for her" and proceeded to seize Zinn's vehicle keys. *Id.* ¶¶ 21-23. Plaintiffs further allege that Aguayo provided Gilmore with a Notification of Vehicle Impoundment *after* Zinn physically arrived at the Sauk Village Police Station and requested to file a complaint with the Chief of Police. *Id.* ¶¶ 25, 28. Finally, Plaintiffs claim that they attempted to file multiple official complaints regarding Aguayo's conduct throughout 2014 and 2015. *Id.* ¶ 48. Despite—or perhaps because of—these complaints, Zinn's vehicle remained impounded for nineteen months, until its release in October 2015. *Id.* ¶ 55. With these facts, it is plausible that both the initial seizure and continued impoundment

13

of Zinn's vehicle were retaliation for Zinn's repeated objections. Therefore, Defendants' motion as it relates to Count III is denied.[5]

C.     **Count IV:** *Monell* **Claim**

In Count IV, Plaintiffs bring a municipal liability claim against Sauk Village under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978).[6] Although *Monell* subjects local governmental units to suit under 42 U.S.C. § 1983, *respondeat superior* will not suffice to impose liability. *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). The municipality's *policy*, not employees, must be the source of the discrimination. *Id.*; *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992) ("Municipalities are answerable only for their own decisions and policies; they are not vicariously liable for the constitutional torts of their agents."). Consequently, a § 1983 complaint against a municipality "must plead the existence of a custom or policy that was the direct cause of the deprivation of a federal right." *Caldwell v. City of Elmwood, Ind.*, 959 F.2d 670, 673 (7th Cir. 1992). Specifically,

---

[5] Defendants additionally argue that Plaintiffs' retaliation claim is flawed for the same reason as Plaintiffs' unlawful seizure claim: the tow and impoundment of Zinn's vehicle was supported by probable cause. Defs.' Mem. Supp. Mot. Dismiss [24] 10; Defs.' Reply [32] 7-8. The Court rejects this argument for the same reasons discussed above.

[6] Plaintiffs' *Monell* claim is not without flaws as currently drafted. Plaintiffs devote inordinate focus to Sauk Village's Vehicle Impoundment Ordinance itself, claiming that it is "unconstitutional" because it "authorizes" and "encourages" violations of the Fourth Amendment. Am. Compl. [19] ¶¶ 76-81. From this, Defendants' motion reasonably interpreted Count IV as a facial challenge to the Ordinance's constitutionality rather than a *Monell* claim against an implemented policy. *See* Defs.' Mem. Supp. Mot. Dismiss [24] 10-11. Plaintiffs' response clarified, however, that they are *not* mounting a facial challenge to the Ordinance. Pls.' Resp. Defs.' Mot. Dismiss [28] 3. Rather, Plaintiffs theorize that Sauk Village "encourages its officers"—under the auspice of the Ordinance— to impound "lawfully parked cars that are not evidence of a crime" for the purpose of "offsetting the Village's massive budget shortfalls." *Id.* 4-5. While the Amended Complaint [19] is imprecise, the Court finds that this theory can nonetheless be reasonably inferred from the language of the complaint. *See* Am. Compl. [19] ¶ 35 (stating that Sauk Village, "in an effort to raise money for the Village," engaged in a "widespread practice of illegally and unconstitutionally seizing private property" and charging monetary fees for its return).

Plaintiffs must plead factual content that would allow the Court to plausibly infer that: (1) they suffered the deprivation of a constitutional right; and (2) an official custom or policy caused that deprivation. *Barwicks v. Dart*, No. 14-cv-8791, 2016 WL 3418570, at *2 (N.D. Ill. June 22, 2016). Regarding the second element, Plaintiffs must plead that the constitutional violation was caused by: (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011).

A § 1983 municipal liability claim "need not meet any heightened pleading standard, but rather must simply set forth sufficient allegations to place the court and defendants on notice of the gravamen of the complaint." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993). In *White v. City of Chicago*, the Seventh Circuit explored the limits of this principle. 829 F.3d 837, 839 (7th Cir. 2016), *cert. denied sub nom.*, 137 S. Ct. 526 (2016). In *White*, following a two-year narcotics investigation, the defendant police officer applied for dozens of arrest warrants, including one for the plaintiff. *Id.* In a later civil suit, the plaintiff claimed that the officer failed to present the judge who issued the warrant with enough information to establish probable cause for the arrest. *Id.* The plaintiff also alleged a *Monell* claim against the City of Chicago for its supposed widespread practice of seeking arrest warrants upon the basis of conclusory complaint forms. *Id.* at 841. The district court originally held that the plaintiff failed to state a

*Monell* claim because his complaint solely stated that the officer who arrested the plaintiff "acted in accordance with a widespread practice of the police department of the City of Chicago when seeking a warrant." *Id*. at 843. According to the district court, this conclusory statement was not enough "to draw the reasonable inference that the City maintained a policy, custom, or practice that deprived [the plaintiff] of his constitutional rights." *Id*.

The Seventh Circuit found the district court's ruling to be in error. *Id*. The court stated that the plaintiff's complaint cited his individual claim against the officer, and further claimed that the officer's conduct was "[i]n accordance with a widespread practice of the police department of the City of Chicago." *Id*. at 844. Citing *Leatherman,* the court held that this "was enough to satisfy the 'short and plain statement of the claim' requirement of Rule 8(a)(2)." *Id*. According to the court, the plaintiff "was not required to identify every other *or even one other individual* who had been arrested pursuant to a warrant obtained through the complained-of process." *Id*. (citing *Jackson v. Marion County*, 66 F.3d 151, 152-53 (7th Cir. 1995)) (emphasis added).

Here, Plaintiffs have sufficiently pled both *Monell* elements at this early stage of the proceedings. As discussed above, the Amended Complaint [19] adequately alleges that Plaintiffs suffered a constitutional deprivation when Aguayo unreasonably seized Gilmore's vehicle in violation of the Fourth Amendment. The Amended Complaint further alleges that Aguayo's seizure occurred "pursuant to [Sauk Village's] widespread practice of illegally and

16

unconstitutionally seizing private property" and charging monetary fees for its return "in an effort to raise money for the Village." Am. Compl. [19] ¶ 35. Under *White*, this is sufficient for the purposes of Rule 12(b)(6).

At summary judgment, of course, Plaintiffs' single incident would not give rise to a *Monell* claim. *See Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014) (stating that although the Seventh Circuit "has not adopted any bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident—or even three incidents—do not suffice."). At this stage, however, Plaintiffs "need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists." *Barwicks*, 2016 WL 3418570, at *4. In other words, Plaintiffs "need only plead that the alleged incident is one of many" occurring in Sauk Village and "that a widespread practice" gave rise to those incidents. *Id.* at *5. Plaintiffs have done so. Although Plaintiffs' claim, "like many § 1983 claims, may not have merit," this does not justify the Court "granting of a motion to dismiss in advance of giving [Plaintiffs] a chance to prove [their] allegations." *Hampton v. City of Chicago*, No. 96 C 3480, 1997 WL 790590, at *5 (N.D. Ill. Dec. 17, 1997). Therefore, Defendants' motion as it relates to Count IV is denied.

17

## IV. Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss for Failure to State a Claim [23] is granted as to Count I and denied as to Counts II-V. The status hearing previously set for March 21, 2017 stands. At that time, the parties shall be prepared to discuss additional case management dates.

Date: March 1, 2017

Entered:

_____
John Robert Blakey
United States District Judge